1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   FRANKLIN BARRIOS,                    Case No. 1:20-cv-01234-NODJ-CDB (PC)

12                  Plaintiff,            **FINDINGS AND RECOMMENDATIONS
                                          TO GRANT DEFENDANTS' MOTION TO
13         v.                             DISMISS AND TO DENY PLAINTIFF'S
                                          MOTION FOR LEAVE TO FILE AN
14   TORRES, et al.,                      AMENDED COMPLAINT**

15                  Defendants.           (Docs. 33 & 40)

16                                        **14-DAY OBJECTION PERIOD**

17

18         Franklin Barrios is proceeding pro se and *in forma pauperis* in this civil rights action

19   pursuant to 42 U.S.C. § 1983. This action proceeds on a First Amendment access to courts claim

20   against Defendant Torres in her individual capacity, and a First Amendment access to courts

21   claim against Defendant Diaz in his official capacity.

22         **I.     INTRODUCTION**

23         Following service of process of the first amended complaint, Defendants Diaz and Torres

24   filed a Motion to Dismiss Plaintiff's First Amended Complaint on June 29, 2023. (Doc. 33.)

25         On September 29, 2023, Plaintiff filed an opposition to Defendants' motion to dismiss.

26   (Doc. 41.) That same date, Plaintiff filed a motion for leave to file an amended complaint. (Doc.

27   40.)

28         On October 11, 2023, Defendants filed a reply to Plaintiff's opposition to their motion to

1   dismiss (Doc. 42) and an opposition to Plaintiff's motion to amend the complaint (Doc. 43).

2   On October 27, 2023, Plaintiff filed a reply to Defendants' opposition to his motion to

3   amend the complaint. (Doc. 44.)

4   **II.    APPLICABLE LEGAL STANDARDS**

5   Defendants move to dismiss Plaintiff's first amended complaint for a failure to state a

6   claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

7   **A. Motions to Dismiss**

8   A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro*

9   *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is

10  generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint,

11  and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

12  F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). "The focus of

13  any Rule 12(b)(6) dismissal ... is the complaint." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194,

14  1197 n.1 (9th Cir. 1998). This precludes consideration of "new" allegations that may be raised in

15  a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Id.* (citing

16  *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993)). Dismissal is proper if there is a "lack

17  of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

18  theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

19  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

21  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court

22  "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

23  most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

24  (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners

25  liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

26  2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's

27  factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

28  Thus, a court's liberal interpretation of a pro se complaint may not supply essential elements of

1   the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

2   1982); *see Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

### B. First Amendment Access to Courts

4   Prisoners retain the First Amendment right "to petition the government for a redress of []

5   grievances," which includes the specific right "to meaningful access to the courts[.]" *Silva v. Di

6   Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011) (citation omitted), abrogated on other grounds as

7   stated in *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The constitutional right of

8   access to the courts generally requires prison officials to ensure that prisoners have the "capability

9   of bringing contemplated challenges to sentences or conditions of confinement before the courts."

10  *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To that end, depending on the circumstances, prison

11  officials may be required affirmatively to "help prisoners exercise their rights" (e.g., provide

12  reasonable access to "adequate law libraries or adequate assistance from persons trained in the

13  law"), or simply to refrain from "active interference" in prisoner litigation. *Silva*, 658 F.3d at

14  1102 (citation omitted); *see, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding "that the

15  fundamental constitutional right of access to the courts requires prison authorities to assist

16  inmates in the preparation and filing of meaningful legal papers by providing prisoners with

17  adequate law libraries or adequate assistance from persons trained in the law") (footnote omitted),

18  overruled in part on other grounds, *Lewis*, 518 U.S. at 354. Prison officials, however, are not

19  required to ensure access beyond "[t]he tools ... inmates need in order to attack their sentences,

20  directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518

21  U.S. at 355 ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into

22  litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall

23  claims.... Impairment of [such] other litigating capacity is simply one of the incidental (and

24  perfectly constitutional) consequences of conviction and incarceration").

25  To state a viable denial of access claim, a prisoner must plausibly show that some official

26  misconduct (e.g., alleged inadequacies in the jail's library facilities or legal assistance program)

27  caused "actual injury" -- that is, that it frustrated or is impeding plaintiff's attempt to bring a

28  nonfrivolous legal claim. *Lewis*, 518 U.S. at 348-49; *Nev. Dep't of Corr. v. Greene*, 648 F.3d

1    1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349) ("'Actual injury' means 'actual

2    prejudice with respect to contemplated or existing litigation'"), cert. denied, 566 U.S. 911 (2012).

3    "[T]he injury requirement is not satisfied by just any type of frustrated legal claim."

4    *Lewis*, 518 U.S. at 354. Rather, the type of legal claim protected is limited to direct criminal

5    appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to

6    vindicate basic constitutional rights. *Id*. at 354. "Impairment of any *other* litigating capacity is

7    simply one of the incidental (and perfectly constitutional) consequences of conviction and

8    incarceration." *Id*. at 355 (emphasis in original).

9    The plaintiff's complaint must describe the alleged underlying claim, whether anticipated

10    or lost, and show that it is "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S.

11    403, 415 (2002) (quotation marks & citation omitted).

12    **III.    PLAINTIFF'S FIRST AMENDED COMPLAINT**

13    In the first amended complaint, Plaintiff contends that in the summer or fall of 2018 he

14    went to the California Correctional Facility D Facility library to obtain Spanish language forms to

15    file a habeas corpus petition challenging his criminal conviction. (Doc. 16 at 3.) Plaintiff states

16    the primary ground for habeas corpus relief "was/is an I.A.C. [ineffective assistance of counsel]

17    claim because his defense attorney "failed to subject the People's case to adversarial testing

18    and/or insufficient evidence …." (*Id* at 3-4.) Plaintiff alleges Defendant Torres refused to assist

19    him. Plaintiff overheard Torres tell other inmates Plaintiff "was a 'weirdo' and 'Cho-mo'" in

20    reference to his convictions. (*Id*. at 4.) Plaintiff contends Torres advised him there were no habeas

21    corpus forms available in the Spanish language. (*Id*.) As a result, Plaintiff contends "time expired

22    on his claim." (*Id*.)

23    Plaintiff contends Torres violated his First and Fourteenth Amendment rights, and that he

24    has demonstrated actual injury in the form of time constraints imposed by the Anti-Terrorism and

25    Effective Death Penalty Act (AEDPA),[1] meaning that the time within which he could file a timely

---

26    [1] The AEDPA establishes a one-year statute of limitations for a prisoner who is in custody as a result of

27    state court judgment to file a federal habeas petition challenging the legality of the detention. 28 U.S.C. §
       2244(d)(1); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). The one-year period typically runs from the

28    date on which the state judgment becomes final "by conclusion of direct review or the expiration of the
       time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

1   habeas petition has now expired. (Doc. 16 at 5.)

2     Next, as to Defendants Diaz and Newsom,[2] sued in their official capacities, Plaintiff states

3   he seeks injunctive relief only. (Doc. 16 at 6.) He contends "a failure to train, supervise, or

4   control their subordinates" is "the causal connection needed to make them liable" because there is

5   "sufficient evidence for a reasonable jury to return a verdict in favor of Plaintiff on a 'supervisor

6   liability' claim." (*Id*.) Plaintiff contends "there can be NO DOUBT" that Defendants Diaz and

7   Newsom "knew that Spanish formatted 'State Petitions for Writ of Habeas Corpus forms' DO

8   NOT exist, thereby violating the Spanish population of California's First and Fourteenth

9   Amendment rights." (*Id*. at 7.) Plaintiff asserts "[t]his demonstrates deliberate indifference to

10  Plaintiff's and/or his sect of both the prison population and/or the People living in the State of

11  California." (*Id*.) Plaintiff contends Diaz and Newsom's "policy of inaction (provide forms

12  legible to all) … is the functional equivalent of a decision by the defendants themselves to violate

13  the Constitution." (*Id*.)

14    **IV.**  **THE PARTIES' POSITIONS**

15      ***Defendants' Motion***

16    Defendants contend Plaintiff's allegations that "in the 'summer of 2018 or early fall of

17  that year'" he was denied Spanish-language materials preventing him from filing a timely habeas

18  corpus petition does not present a backwards looking access to courts claim because the

19  applicable statute of limitations required that Plaintiff file his federal habeas petition no later than

20  August 11, 2016, meaning the deadline had passed two years prior. (Doc. 33 at 6-7.) Moreover,

21  Defendants argue Plaintiff's alleged injury—that the deadline for filing a timely habeas petition

22  had expired—was not caused by Defendants, but by "Plaintiff's own dilatory conduct." (*Id*. at 7.)

23  Defendants assert the petition was late "before Plaintiff even requested materials from

24  Defendants." (*Id*.) Defendants maintain Plaintiff's first amended complaint does not allege any

25  "specific actions by Defendants that directly caused or contributed to the alleged constitutional

26  injury in this case," arguing the claim fails as a matter of law and the complaint must be

27  _____

28  [2] Defendant Newsom was dismissed from this action on February 21, 2023. (*See* Doc. 22.) Therefore, the
    Court considers these facts as to Defendant Diaz only.

1    dismissed with prejudice because amendment would be futile. (*Id.* at 8.)

2                              ***Plaintiff's Opposition***

3           Plaintiff contends he continues to suffer from the deprivation of his First Amendment

4    right to petition the government regarding his conviction. (Doc. 41 at 1.) Plaintiff contends that

5    the states must provide adequate law libraries and individuals trained in the law to assist inmates.

6    (*Id.* at 1-2.) He asserts that Defendants' argument "that the plaintiff only has frivolous claims to

7    make via habeas, really exposed the reality [that] the defendants' counsel is not very well versed

8    in habeas corpus jurisprudence circa 2022." (*Id.* at 2.) Plaintiff argues that Defendants' assertion

9    that Plaintiff "'missed the deadline to file the habeas petition two years before he allegedly sought

10   Spanish-language materials from [the] Defendants,'" misrepresents "the reality that there is no

11   statutory deadline to file a habeas petition in a California state court." (*Id.*) Plaintiff contends he

12   "is alleging a substantial and fundamental constitutional rights violation and he is alleging actual

13   innocence under the miscarriage of justice doctrine which excepts him procedurally from any

14   adequate and independent state law ground being used against him" (*Id.*) Plaintiff contends he

15   suffered actual "harm because the claim the plaintiff has made via habeas is the denial of the

16   assistance of counsel in his defense" and that "the Supreme Court has held that new and extrinsic

17   evidence must be presented to the state court so that the factual basis of a petitioner's claims can

18   be fully developed in a state court proceeding. It is those proceedings which will be reviewed

19   upon the presentation of a habeas petition to the federal court." (*Id.* at 3.) Finally, Plaintiff asserts

20   that his "Second[3] Amended Complaint filed simultaneously with this opposition memorandum

21   cures any previous defects and the plaintiff asks this Court to liberally construe all of his facts in

22   the light most favorable to him and to deny" the Defendants' motion. (*Id.*)

23                          ***Defendants' Reply to the Opposition***

24          Defendants assert Plaintiff's opposition fails to dispute any of the facts or legal arguments

25   presented in their motion. (Doc. 42 at 1.) Defendants contend Plaintiff's arguments that he was

26   prevented from filing a state habeas corpus petition for which there is no statutory deadline and

27

28   [3] Plaintiff was previously advised his "lodged proposed second amended complaint" filed in February
     2023 would not be filed and was granted leave on March 23, 2023 to file a third amended complaint. (*See* Doc. 29 at 9 & n.1.)

that his arguments on habeas were "'substantial and fundamental …,'" are unavailing because the time limitation imposed by the AEDPA is applicable to federal habeas petitions rather than state habeas petitions, and that Plaintiff has already asserted actual innocence in a federal habeas petition that a district court determined against him. (*Id*. at 2.) Defendants maintain their conduct did not cause Plaintiff's harm. (*Id*. at 2.) Defendants assert Plaintiff fails to explain how preventing Plaintiff from filing what he now claims was a state habeas petition in 2018 results in a lost opportunity to Plaintiff, because the AEDPA applies to federal habeas petitions not state habeas petitions. (*Id*. at 3.) Further, Defendants assert that even though a properly filed state habeas petition is excluded from the one-year time limit imposed by the AEDPA, "a pending state habeas petition in 2018 would have had no effect on the AEDPA statute of limitations for Plaintiff's petition, which expired in August 2016." (*Id*.)

Defendants further contend that Plaintiff's opposition improperly asserts a "new forward-looking claim," but he did not assert a forward-looking claim in his first amended complaint, nor did the Court assess a forward-looking claim; "the Court screened a backward-looking claim." (*Id*.) Defendants argue that Plaintiff's assertion he was prevented from presenting an actual innocence claim is wrong. (*Id*.) Defendants state Plaintiff has already presented his actual innocence claim to the Northern District, and that court determined Plaintiff was not entitled to the actual innocence exception. (*Id*.) Thus, Defendants contend, Plaintiff did not suffer any injury. (*Id*. at 3-4.) Defendants maintain Plaintiff cannot establish any conduct by them directly causing or contributing to Plaintiff's alleged constitutional injury. (*Id*. at 4.) Next, Defendants assert Plaintiff cannot cure this defect by filing an amended complaint "because the filing deadline for his habeas petition passed long before Defendants' alleged conduct in 2018 in denying him access to forms." (*Id*.) They assert Plaintiff's allegations in the proposed second amended complaint "are substantially the same as the allegations" in the operative complaint and do not alter the fact the deadline for filing a federal habeas petition expired nearly two years before Plaintiff allegedly sought assistance from the Defendants. (*Id*.) Further, Defendants point out that the proposed second amended complaint alleges the same injury, to wit: the dismissal of Plaintiff's federal habeas petition on July 22, 2019. (*Id*.) And, Defendants argue, "to the extent Plaintiff alleges that

7

1   the Northern District dismissed his petition *because* Plaintiff failed to pursue state collateral

2   relief, Plaintiff is incorrect;" rather, that Court dismissed the petition as untimely. (*Id.*, emphasis

3   in original.) Next, Defendants contend that even assuming Plaintiff filed a state habeas petition in

4   2018, such a filing would not have rendered Plaintiff's federal habeas petition timely and,

5   therefore, the proposed second amended complaint does not cure the defects in Plaintiff's

6   operative first amended complaint. (*Id.* at 4-5.) Finally, Defendants ask the Court to dismiss the

7   first amended complaint with prejudice. (*Id.* at 5.)

8              **V.    REQUEST FOR JUDICIAL NOTICE**

9        Defendants request this Court take judicial notice of the two exhibits: (1) the Pacer Civil

10  Docket in the action entitled *Barrios v. Sullivan*, Case No. 4:18-cv-03963-JST, filed in the United

11  States District Court for the Northern District of California; and (2) the Order granting

12  Respondents' Motion to Dismiss filed in that same action. (Doc. 33-2.)

13        Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is

14  not subject to reasonable dispute because it: (1) is generally known with the trial court's territorial

15  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

16  reasonably be questioned." A court "may take notice of proceedings in other courts, both within

17  and without the federal judicial system, if those proceedings have a direct relation to matters at

18  issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th

19  Cir. 1992) (citation omitted); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (same). If a

20  court takes judicial notice of a document, it must specify what facts it judicially noticed from the

21  document. *Id.* And a court may take judicial notice of the orders and decisions of other courts and

22  administrative agencies. *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 (9th Cir. 1995)

23  (overruled on other grounds).

24        This Court takes judicial notice of the docket in the *Barrios v. Sullivan* action filed in the

25  Northern District and assigned case number 4:18-cv-03963-JST. (*See* Doc. 33-2 at 4-7 [Exhibit

26  A].) Further, the Court takes judicial notice of the Order Granting Motion To Dismiss; Denying

27  Certificate Of Appealability, filed July 22, 2019, in that same action. (*Id.* at 8-16 [Exhibit B].)

28  More specifically, the Court takes judicial notice that the deadline for filing a habeas corpus

petition following Plaintiff's criminal conviction was August 11, 2016, and that Plaintiff's

petition was untimely when filed on June 24, 2018. Additionally, the Court takes judicial notice

of the Northern District's findings that Plaintiff was not entitled to delayed commencement of the

applicable limitations period, equitable tolling, or the "actual innocence" exception. *See Robinson*

*Rancheria Citizens Council*, 971 F.2d at 248.

## VI.    DISCUSSION

### *Plaintiff's Access to Court Claims Should Be Dismissed*

Initially, this Court notes Defendants' motion to dismiss concerns the operative first

amended complaint. To the extent Plaintiff argues in his opposition that his proposed and lodged

amended complaint—submitted after Defendants filed the instant motion—should be considered

by the Court in its determination here, Plaintiff's contention is not persuasive. "In determining the

propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's

moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."

*Schneider*, 151 F.3d at 1197 n.1 (citing *Harrell*, 13 F.3d at 236). The focus of any dismissal under

Federal Rule of Civil Procedure 12(b)(6) is the complaint. *Id*. If a complaint fails to state a claim,

a plaintiff may not insert the missing allegations in the opposition. *Harrell*, 13 F.3d at 236. Thus,

the Court does not consider the allegations raised in the proposed and lodged amended complaint;

rather, it considers only the allegations raised in the operative first amended complaint.

Plaintiff's first amended complaint asserts Defendants deprived him of his right to access

the courts when Defendants refused to provide Spanish language forms and that, as a result, the

deadline for seeking collateral relief expired, leaving Plaintiff without a remedy.

Plaintiff was convicted in San Benito County Superior Court case number CR-11-02013

and judgment was entered January 10, 2013.[4] On February 25, 2015, the Sixth District Court of

Appeal modified the judgment to strike Plaintiff's conviction for violating subdivision (a) of

California Penal Code section 288.3 and directed the superior court to prepare an amended minute

---

[4] https://appellatecases.courtinfo.ca.gov/search/case/trialCourt.cfm?dist=6&doc_id=2034942&doc_no=H039190&request_token=NiIwLSEnXkw%2BWyBVSCNdWEhIIFA7UCxbICBOQzNTMCAgCg%3D%3D (accessed 1/16/2024).

order and amended abstract of judgment to reflect same, and to remove a $120 fine and an order for AIDS testing; as modified, the judgment was affirmed.[5] On April 7, 2015, Plaintiff filed a petition for review in the California Supreme Court, case number S225594; the state's highest court denied review on May 13, 2015.[6]

Because Plaintiff did not seek review in the United States Supreme Court by way of a petition for writ of certiorari, his conviction became final on or about August 11, 2015 (5/13/2015 + 90 days = 8/11/2015). 28 U.S.C. § 2254(d)(1)(A); *see, e.g.*, *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner generally must file a federal habeas petition within one year of the date his conviction became final. 28 U.S.C. § 2244(d)(1). In this case then, Plaintiff was required to file his federal habeas petition on or about August 11, 2016.

As Defendants point out, the "filing deadline for this habeas petition had already long passed" when Plaintiff "sought assistance from Defendants in the 'summer of 2018 or early fall of that year.'" (Doc. 33-1 at 7.) As discussed below, the Court finds the misconduct alleged in July of 2018 did not frustrate or impede Plaintiff's attempt to bring nonfrivolous legal claims in a habeas petition. *Lewis*, 518 U.S. at 348-51.

Plaintiff's opposition generally asserts he has stated a First Amendment access to courts claim, that defense counsel "is not very well versed in habeas corpus jurisprudence," that the United States Supreme Court has determined "habeas corpus is a privilege and not a right and [that] it is purely a discretionary power given to the courts, but also that it is an issue to be resolved in the state court, especially if the resolution requires the presentation of new evidence into the record extrinsically," and "that there is no statutory deadline to file a habeas petition in a

---

[5] https://appellatecases.courtinfo.ca.gov/search/case/disposition.cfm?dist=6&doc_id=2034942&doc_no=H039190&request_token=NiIwLSEnXkw%2BWyBVSCNdWEhIIFA7UCxbICBOQzNTMCAgCg%3D%3D> (accessed 1/16/2024).

[6] https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2105346&doc_no=S225594&request_token=NiIwLSEnXkw%2BWyBVSCNdVEtJUEA0UDxTISNOUzNSMCAgCg%3D%3D> (accessed 1/16/2024).

California state court and Plaintiff is alleging a substantial and fundamental constitutional rights violation and he is alleging actual innocence under the miscarriage of justice doctrine which excepts him procedurally from any adequate and independent state law ground. (Doc. 41.)

Plaintiff asserts that "in the summer of 2018 or early fall of that year" he sought "forms (in Spanish) to file a '*State* Petition for Writ of Habeas Corpus,' to begin a collateral attack on his 'criminal conviction …'" (Doc. 16 at 3, italics added.) Plaintiff alleges that as a result of Defendants' interference, "time expired on his claim." (*Id*. at 4.) Plaintiff also alleges "now the AEDPA time limitations have elapsed based on circumstances beyond his control" and that action was "barred due to his inability to satisfy a technical requirement," citing the AEDPA (*Id.* at 5.)

First, to the extent Plaintiff can be understood to assert that the AEDPA's one-year limitations period applies to state court habeas petitions, he is mistaken. 28 U.S.C. § 2244(d)(1) provides a one-year limitations period for all *federal petitions* for writs of habeas corpus filed by state prisoners. California has no set deadline for filing state habeas petitions, so long as they are "filed within a reasonable time." *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) (internal quotation marks & citation omitted). The Ninth Circuit has stated that thirty to sixty days is a "benchmark for California's reasonable time requirement." *Velasquez v. Kirkland*, 639 F.3d 964, 968 (9th Cir. 2011) (internal quotation marks omitted).

Next, Plaintiff did not file a state habeas petition in any state superior or intermediate appellate court, nor did he file a state habeas petition in the California Supreme Court. (*See* Doc. 33-2 at 10 ["Petitioner did not pursue state collateral relief. Pet. at 3"].)[7] Accepting as true Plaintiff's assertion that he intended to "begin a collateral attack" on his criminal conviction by way of a state habeas petition, as Defendants have shown, Plaintiff cannot state a claim. This is so because while California does not provide a specific deadline for the filing of a state habeas petition following the conclusion of direct review of the a criminal conviction, the years long delay following the date upon which Plaintiff's conviction became final—August 11, 2015— and the dates upon which Plaintiff sought assistance from Defendants— "the summer of 2018 or early fall of that year"—appears unreasonable. *See Carey v. Saffold*, 536 U.S. 214, 222 (2002)

---

[7] A search of www.courtinfo.ca.gov confirms this statement.

(California courts apply reasonableness standard in relation to timeliness); *In re Sanders*, 21 Cal.4th 697, 701 (1999) (petitions for writ of habeas corpus "should be filed without substantial delay, or good cause must be shown for the delay"); *In re Robbins*, 18 Cal.4th 770, 780 (1998) ("Substantial delay is measured from the time the petitioner or his … counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim"); *In re Clark*, 5 Cal.4th 750, 765 n.5 (1993) (habeas petition should be filed as promptly as circumstances allow). More significantly, however, even assuming the truth of Plaintiff's assertions concerning Defendants' actions, those actions cannot be said to have hindered or interfered with Plaintiff's ability to file a state habeas petition in a state court between August 11, 2015 and July of 2018. Nor could Defendants' conduct hinder or interfere with Plaintiff's ability to file a federal habeas petition where the deadline for filing a federal petition expired nearly two years prior.

In the first amended complaint, Plaintiff asserts he intended "to begin a collateral attack" by asserting "an I.A.C. claim," ineffective assistance of counsel, "and/or insufficient evidence," and that those claims "are 'non-frivolous and arguable.'" (Doc. 16 at 3-4.) The Court notes Plaintiff's direct appeal in the Sixth Appellate District included a claim of ineffective assistance of counsel for a failure to object to a comment by the prosecutor in closing argument and for failing to request a related jury instruction. *See People v. Barrios*, No. H039190, 2015 WL 798169, at *2 (Cal. App. 6th Dist. Feb. 25, 2015).[8] That court held that it appeared defense counsel "acted deficiently" in failing to object to the prosecutor's remarks, but that there was "no reasonable probability that the outcome would have been more favorable to [him] had counsel objected." *Id.* at *6. It noted the victim's "testimony and CART interview were compelling" and that the prosecution's "case did not rest solely on [the victim's] accounts, but also on the grandmother's testimony" that the victim told her Plaintiff had sexual abused her. The state appellate court concluded "the prosecution case was strong, and, evidently, little could be offered to counter it. For lack of prejudice, there was no ineffective assistance of counsel." *Id.*

---

[8] *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

In his opposition, Plaintiff refers to the lack of "a statutory deadline to file a habeas petition in a California state court," and contends "he is alleging actual innocence under the miscarriage of justice[9] doctrine which excepts him procedurally from any adequate and independent state law ground being used against him." (Doc. 41 at 2.) While otherwise procedurally barred claims, including untimely claims, may be saved from a procedural bar on an adequate and independent state law ground, Plaintiff has nevertheless failed to causally connect the actions taken by Defendants here to the loss of his ability to file a habeas petition in state court. And again, Defendants' alleged actions cannot be said to have frustrated or interfered with Plaintiff's ability to file a federal habeas petition on or before August 11, 2016, where Defendants' alleged conduct occurred in July 2018.

Notably, in its order of July 22, 2019, the Northern District of California recounts Plaintiff's argument before that Court "that he was unable to timely file his petition because he is unable to obtain the legal documents necessary to file this petition, specifically the trial transcripts, the police report, the DNA report, the probation report, and the sentencing report." (Doc. 33-2 at 11.)  As to the DNA report in particular, Plaintiff argued it "proves his actual innocence." (*Id*. at 12.) The Northern District held Plaintiff "failed to show a causal connection between his inability to obtain these documents and the delayed filing of the instant habeas petition because he was able to file the instant habeas petition despite still not being in possession of these documents" and thus he was "not entitled to equitable tolling of the limitations period." (*Id*. at 14.) The district court further found Plaintiff was "not entitled to the 'actual innocence' exception … because he has failed to provide any new reliable evidence of actual innocence," noting the "'evidence' of his innocence is the DNA report that was presented at trial. The DNA report is not new evidence. Nor does it reliably prove his innocence. The jury presumably

---

[9] A petition for writ of habeas corpus that is substantially delayed without good cause is considered untimely and will not be considered on the merits unless the defects alleged by the petitioner constitute a "fundamental miscarriage of justice," which has previously been defined as one of the following: "(1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which he was convicted; (3) that the death penalty was imposed [based on grossly misleading information and] that absent the error or omission no reasonable judge or jury would have imposed a sentence of death; or (4) that the petitioner was convicted under an invalid statute." *Clark*, 5 Cal.4th at 759.

considered this DNA report in finding him guilty. [¶] In sum, Petitioner has failed to show that the claims in his federal petition are timely, or that he qualifies under any exception to AEDPA's statute of limitations. Accordingly, the petition will be dismissed as untimely." (*Id*. at 15.)

At bottom, Plaintiff cannot establish actual injury because Defendants' actions as alleged in the first amended complaint did not frustrate or impede Plaintiff's ability to file either a state habeas petition or a federal habeas petition. *Harbury*, 536 U.S. at 415-16 (the absence of an injury precludes an access claim); *Lewis*, 518 U.S. at 349-51 ("the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"); *Greene*, 648 F.3d at 1018 ("Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived."). Therefore, Plaintiff has failed to state a claim upon which relief can be granted and his claims against the Defendants should be dismissed.

### *Leave To Amend Should Not Be Granted*

This Court must now determine whether Plaintiff should be granted leave to file an amended complaint. In this case, Plaintiff filed a motion seeking leave to file an amended complaint contemporaneously with his opposition to the motion to dismiss.

### Relevant Background

On March 29, 2023, this Court granted in part and denied in part Plaintiff's previous motion to file an amended complaint. (Doc. 29.) Significantly, while the Court found it "proper to join Does 1 through 10 for the constitutional violations alleged in the first cause of action in Plaintiff's proposed second amended complaint" regarding Plaintiff's right to access the courts— those Doe defendants being employed at other California prisons where Plaintiff was previously housed—Plaintiff was expressly ordered to "**file his third amended complaint within 30 days of the date of service**" of that order. (*Id*. at 9, emphasis in original.) Plaintiff was further advised: "In the event Plaintiff fails to file a third amended complaint as ordered, this action will proceed on the claims found cognizable in this Court's Findings and Recommendations issued January 17, 2023 … and adopted by Judge de Alba on February 21, 2023." (*Id.*)

Plaintiff did not file a third amended complaint as ordered. Instead, service of process was

effected in the interim, and Defendants filed their motion to dismiss on June 29, 2023 – some two

months *after* the passage of Plaintiff's deadline to file any amended complaint. (*See* Docs. 30-33.)

### Plaintiff's Motion for Leave to Amend

In his single-page motion, Plaintiff requests leave to file an amended complaint, pursuant

to Federal Rule of Civil Procedure 15, "in order to clarify and comprehensively plead his claims

for relief based on the original set of operative facts." (Doc. 40.) He states he "has received

assistance from an inmate who has assisted him in the creation of the SECOND AMENDED

COMPLAINT." (*Id*.) Further, Plaintiff states that "[s]ince the previous filing of the FIRST

AMENDED CMPLAINT and his receipt of the Magistrate's Findings and Recommendations,

Plaintiff has become aware of deficiencies in his FIRST AMENDED COMPLAINT which have

been corrected in the SECOND AMENDED COMPLAINT attached hereto." (*Id*.) Plaintiff asks

the Court to "grant leave freely … according to Forman v. Davis 83 S.Ct. 227 (1962) and

Williams v. Cargill, Inc., etc." (*Id*.)

Notably, Plaintiff's September 2023 motion for leave to file an amended complaint

reveals it is a near-duplicate of his earlier February 2023 motion, with the single exception being

the date the document was signed. (*Cf*. Doc. 40 to Doc. 25.)

### Defendants' Opposition

Defendants oppose Plaintiff's motion for leave to file an amended complaint, contending

the factors to be considered weigh against granting leave to amend. (Doc. 43.) Defendants argue

Plaintiff unduly delayed seeking leave to amend by failing to comply with the Court's March 29,

2023 order, instead waiting until they filed a motion to dismiss "even though the events alleged to

have caused him harm occurred before he filed the original complaint." (*Id*. at 5.) Defendants

further argue permitting Plaintiff leave to file an amended complaint would prejudice them

because it would delay litigation as it "asserts new First Amendment and Fourteenth Amendment

claims against unidentified Does 1-10, and new state law claims against Defendants and

unidentified Does 1-10." (*Id*. at 6.) Defendants note further screening would be required as would

"service on any new defendant." (*Id*.) Third, Defendants contend "amending the complaint would

be futile because the claims Plaintiff proposes to add are not properly joined in this action." (*Id*.)

Specifically, Defendants maintain the additional claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims asserted against Defendants Diaz and Torres because in the "proposed SAC, Plaintiff alleges that two years earlier in 2016, at a completely different institution, Corcoran, Does 1-4 did not provide Plaintiff assistance challenging his criminal conviction, and that from 2016-2017, at yet another institution, Avenal, Does 5-8 did not provide Plaintiff with the materials and assistance he needed to challenge his criminal conviction." (*Id*.) Defendants contend the claims are "distinct and unrelated claims that would rely on different evidence and witnesses," making joinder improper and amendment futile. (*Id*. at 6-7.) Further, Defendants contend the addition of state law claims would be futile because failure to comply with state statutes or prison regulations do not state claims under section 1983. (*Id*. at 7-8.) Moreover, as they argued in the motion to dismiss, Defendants contend Plaintiff did not suffer an actual injury and that defect cannot be cured by amendment. (*Id*. at 8.) Finally, Defendants assert "Plaintiff has had ample time and opportunity to amend his complaint over the past three years and should not be granted yet another opportunity" to do so. (*Id*.)

Plaintiff's Reply to the Opposition

Plaintiff notes he should be permitted to "amend the operative complaint" because he was unable to clearly articulate his claim "due to the reality that Spanish language speaking inmates who use Spanish as their primary language are disproportionately limited by the defendant CDCR in seeking relief in the courts." (Doc. 44.) Plaintiff contends he is "reliant upon the defendants, both individually and collectively, for the provision of the method and the means to access the courts meaningfully," and that he is "owed a duty of care" due to his incarceration. (*Id*. at 2.) Plaintiff contends he has not unduly delayed the proceedings and states that the "delay in the proceedings is the direct result of the defendants failures, both individually and collectively, to assist the plaintiff in pleading and litigating his claims in the court, whether they are civil or criminal." (*Id*. at 3.) He asserts he "has secured the assistance of a person who is able to assist him" and that "should prevent further delays." (*Id*.) Plaintiff then contends: "The obvious deficiencies in the original complaint are structural deficiencies and when liberally construed, state the same claims as are presented in the amended complaint." (*Id*.) Plaintiff contends he "has

16

not acted nefariously to prejudice the defendants," cites to authority relating to First Amendment

access to court claims, asserts Defendants are "liable for the damages they have caused" and

states that "it is the illegal conviction which is being challenged on non-frivolous grounds which

is at the heart of this complaint. The denial of a capacity to plead and litigate is at the center of the

controversy here." (*Id*. at 4.) Plaintiff contends Defendants' assertion they would be prejudiced is

"without merit since the plaintiff can file additional suits" and that by permitting "amendment at

this juncture (which is liberally permitted), judicial economy would be served. The fact that the

defendants have filed a motion to dismiss is their attempt at kicking a horse while he is down."

(*Id*. at 5.) Plaintiff contends he "was convicted at trial with no defenses provided," his "trial was a

sham, but he is not challenging his conviction here," but is "in need of filing a habeas petition in

state court and the defendants are not providing him with the assistance necessary" to complete

the task. (*Id*.) Next, Plaintiff asserts the additional defendants are properly joined and the

argument to the contrary "is ludicrous." (*Id*. at 6.) Finally, Plaintiff argues at length that he has

properly asserted state law claims in the proposed amended complaint. (*Id*. at 6-9.)

Analysis

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's

pleading once as a matter of course at any time before a responsive pleading is served. Fed. R.

Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent

of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P.

15(a)(2).

While courts exercise broad discretion in deciding whether to allow amendment and have

generally adopted a liberal policy, "that discretion is not unlimited." *See United States ex rel.

Ehmcke Sheet Metal Works v. Wausau Ins. Cos*., 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing

*Jordan v. Cnty. of L.A*., 669 F.2d 1311, 1324 (9th Cir. 1982), rev'd on other grounds, 459 U.S.

810 (1982)). "Those limitations include undue prejudice to the opposing party, bad faith by the

movant, futility, and undue delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

1047, 1058 (9th Cir. 2011) (citations & internal quotation marks omitted). "Courts may decline to

grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive

1  on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed

2  undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

3  amendment, etc.'" *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117

4  (9th Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In the Ninth Circuit, these

5  factors are commonly referred to as the "*Foman* factors." *See Eminence Capital, LLC v. Aspeon,*

6  *Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003). Granting or denying leave to amend rests in the sound

7  discretion of the trial court and will be reversed only for abuse of discretion. *Swanson v. U.S.*

8  *Forest Serv*., 87 F.3d 339, 343 (9th Cir. 1996).

9  1.   Undue Delay/Bad Faith

10  Undue delay, while relevant, will not by itself justify denial of leave to amend. *See, e.g.*,

11  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("The delay of

12  nearly two years, while not alone enough to support denial, is nevertheless relevant. [Citation

13  omitted.]"); *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) ("Specifically, we noted

14  that delay alone no matter how lengthy is an insufficient ground for denial of leave to amend");

15  *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (reversing trial court decision to

16  deny leave to amend after unjustified five-year delay and noting that "we know of no case where

17  delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend"). Rather,

18  undue delay must usually be coupled with another factor, such as bad faith or undue prejudice, to

19  support denial of leave to amend. *See, e.g.*, *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465

20  F.3d 946, 953 (9th Cir. 2006).

21  In the circumstances present here, the Court finds Plaintiff unduly delayed filing his

22  September 2023 motion for leave to amend. First, Plaintiff asserts nothing new in his second

23  motion; the motion is entirely duplicative of the earlier motion considered by the Court. When the

24  Court granted the earlier motion in part to allow Plaintiff to amend his complaint regarding his

25  access to courts claims, Plaintiff failed to take any action—he did not file an amended complaint

26  within 30 day of the Court's March 29, 2023 order. Instead, Plaintiff waited six months to do so,

27  and only after Defendants filed a motion to dismiss. Plaintiff's assertion that the Defendants are

28  the cause of the delay is not well taken and Plaintiff fails to offer any reason for his failure to file

an amended complaint following the Court's March 29, 2023 order. Moreover, all facts were known to Plaintiff when he filed his original complaint and were known at the time he filed his earlier motion. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (finding "undue delay" where parties "knew or should have known the facts and theories raised by the amendment" at the time of filing the original pleading, and had no explanation for failing to raise them earlier); *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1520 (9th Cir. 1983) (repetitious motions to amend and the filing of multiple amended complaints also raise an inference of bad faith); *Ehmcke Sheet Metal Works*, 755 F. Supp. at 908 (amendments to pleading are liberally allowed although they may be denied as a result of undue delay, bad faith, undue prejudice to opposing party, or futility of proposed amendment); *see also Kourtis v. Cameron*, 358 Fed. Appx. 863, 867, 2009 WL 4885054, at *2 (9th Cir. 2009) (district court did not abuse its discretion by denying motion for leave to file a second amended complaint adding new defendants nearly four years after the potential defendants should have been known to plaintiffs). Plaintiff plainly knew of the allegations involving officials at other institutions commencing in 2016, at the time he filed the instant action in September 2000.

## 2.   Prejudice to Opposing Party

Prejudice to the opposing party is the most important factor in deciding whether to grant or deny leave to amend. *Eminence*, 316 F.3d at 1052 (citing cases for principle that prejudice is factor carrying the greatest weight in deciding whether to grant leave to amend). Standing alone, the mere addition of new claims and parties does not necessarily amount to undue prejudice. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("[The Rule 15(a)] liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties"). However, substantial undue prejudice will be found where new theories would alter the nature of the litigation and are alleged late in the discovery schedule or after the discovery window has closed. *See, e.g.*, *Zivkovic v. S. California Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (finding substantial prejudice justifying denial of leave to amend where the "additional causes of action would have required further discovery, which was to close five days after the motion to amend was filed).

1    Here, while Defendants claim prejudice because amendment would delay the litigation

2    and require additional screening, the Court finds the prejudice, while not insubstantial, to be less

3    substantial where a discovery and scheduling order has not yet issued in this matter. *Cf. Coleman*

4    *v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir. 2000) ("A need to reopen discovery and

5    therefore delay the proceedings supports a district court's finding of prejudice from a delayed

6    motion to amend the complaint") (quotation marks & citation omitted).  Thus, this factor standing

7    alone does not warrant denial of Plaintiff's motion.

8                                     3.   Futility

9    "[A] proposed amendment is futile only if no set of facts can be proved under the

10   amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*

11   *v. Rykoff–Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988). The Ninth Circuit has alternatively

12   stated that the test of whether amendment would be futile is "identical to the one used when

13   considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id*. (citing 3 J. Moore,

14   Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)). "Futility of amendment can, by itself, justify

15   the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995);

16   *Miller*, 845 F.2d at 214 ("motion for leave to amend may be denied if it appears to be futile");

17   *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1298 (9th Cir. 1998) (futility alone may be

18   grounds for denying relief).

19   Here, as determined above in relation to considering Defendants' motion to dismiss, the

20   Court found amendment of the operative complaint would be futile. This Court further finds the

21   amendments in the proposed and lodged amended complaint are insufficient to state a claim upon

22   which relief can be granted.

23   Plaintiff's proposed and lodged amended complaint alleges that "[b]eginning on or about

24   July of 2016" Plaintiff sought assistance from personnel in the Corcoran State Prison law library

25   "in challenging his conviction in the courts," including requesting Spanish language forms and

26   materials; Does 1 through 4 "told him he could not receive the forms, materials, or assistance he

27   was requesting." (Doc. 39 at 6-7.) Plaintiff alleges his requests occurred "between July 2016 and

28   the end of 2016 when Plaintiff transferred to Avenal State Prison." (*Id*. at 7.) The proposed

amended complaint further alleges that at Avenal State Prison, Plaintiff made "several attempts to gain access to materials and assistance," but Does 5 through 8 told him "there was nothing that could be done for him because he did not speak English and there were no Spanish forms available at all." (*Id.* at 7.) Plaintiff contends these responses continued through late 2017. (*Id.*) When Plaintiff was transferred from Avenal to the state prison in Tehachapi, presumably in late 2017, his requests for assistance and materials were met with a similar fate. (*Id.*) Next, the proposed amended complaint alleges that "[b]eginning on or about May 21, 2018," Plaintiff sought assistance at the CCI law library "to obtain a grievance form and a habeas corpus form so that he could try to change the trajectory of his efforts in the courts." (*Id.*) The allegations concerning CCI involve Defendant Torres. (*Id.* at 7-8.) Plaintiff includes allegations against Defendant Diaz, stating that "[o]n or about May 21, 2018," Defendant Diaz was "directly responsible for the policies and procedures in place…" (*Id.* at 8-9.) Plaintiff asserts Does 9 and 10 are defendants "responsible for the denials of assistance at all CDCR prison which housed Plaintiff between 2016 and currently." (*Id.* at 10.)

The earliest alleged conduct attributed to any Doe Defendant in the proposed and lodged amended complaint is "July of 2016." Even assuming the truth of Plaintiff's assertions, and with the understanding that the AEDPA one-year deadline applicable to any federal habeas petition to be filed by Plaintiff was to expire on or about August 11, 2016, Plaintiff cannot state a plausible First Amendment access to courts claim in the proposed amended complaint. As concerns the filing of a state habeas petition, Plaintiff fails to include any explanation for the period between August 11, 2015 and "July of 2016," a period of at least 325 days.[10] Therefore, there were 40 days remaining on the AEDPA clock assuming Plaintiff sought assistance on the first day of July 2016. And assuming Plaintiff was hindered by the actions of Does 1 through 4 at the Corcoran State Prison law library, Plaintiff did not act reasonably or diligently by "[b]eginning" any effort to challenge his criminal conviction by way of a state habeas petition in "July of 2016." *See Velasquez*, 609 F.3d at 968 (30 to 60 days "benchmark for California's reasonable time

---

[10] 7/1/2016 – 8/11/2015 = 325 days.

1   requirement" relating to the filing of a state habeas petition); *In re Sanders*, 21 Cal.4th at 701; *In*

2   *re Clark*, 5 Cal.4th at 765 n.5. In other words, by starting his efforts to file a state habeas petition

3   in "July of 2016," Plaintiff waited an unreasonable period of time and there are no facts

4   whatsoever to suggest Plaintiff would be entitled to any tolling applicable in a state habeas

5   proceeding.[11] Plaintiff cannot establish actual injury because the actions alleged in the proposed

6   and lodged amended complaint did not frustrate or impede Plaintiff's ability to file a state habeas

7   petition. *Harbury,* 536 U.S. at 415-16.

8         To the extent Plaintiff asserts his state law claims are properly alleged in the proposed

9   amended complaint,[12] the Court disagrees. In its March 29, 2023 Order, the Court denied

10   Plaintiff's earlier motion for leave to amend regarding the state law claims based upon Title 15 of

11   the California Code of Regulations section 3160[[13]] and California Penal Code sections 2600 and

12   2601. (*See* Doc. 29 at 6-7.) Further, Plaintiff has no private right of action under California Penal

13   Code sections 2600 and 2601. *See Stephen v. Tilestone*, No. 2:20-cv-1841 KJN P, 2021 WL

14   289379, at *4 (E.D. Cal. Jan. 28, 2021) ("plaintiff has not established that California Penal Code

15   Section 2600 permits a private right of action. 'A private right of action under a criminal statute

16   has rarely been implied'"). Nor has the Court found an implied private right of action under Title

17   _____

18   [11] Notably too, the Ninth Circuit has held "[A] non-English-speaking petitioner seeking equitable tolling
    must, at a minimum, demonstrate that ... he was unable, *despite diligent efforts*, to procure either legal

19   materials in his own language or translation assistance from an inmate, library personnel, or other source."
    *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006) (emphasis added). *See Green v. White*, 223 F.3d

20   1001, 1003 (9th Cir. 2000) (petitioner not entitled to tolling for state petitions filed after federal time
    limitation has run); *Ferguson v. Palmateer*, 321 F.3d 820 (9th Cir. 2003) ("section 2244(d) does not

21   permit the reinitiation of the limitations period that has ended before the state petition was filed"). Thus, to
    the extent Plaintiff can be understood to argue any Doe Defendant interfered with or hindered his ability to

22   file a *federal* habeas petition, the argument lacks merit.

23   [12] The Court notes the proposed amended complaint submitted on September 29, 2023 (Doc. 39) is largely

24   unchanged from that submitted on February 27, 2023 (Doc. 26) as concerns these claims. Plaintiff added
    the following additional paragraph to the most recent proposed complaint: "38. The defendants, each and

25   all of them, individually and collectively, acted negligently under negligence per se principles (See Evid.
    C. § 669.)" (*See* Doc. 39 at 13.)

26   [13] That section states: "Inmate access to the courts shall not be obstructed. Staff shall assist illiterate

27   inmates or those physically incapable of preparing forms adopted under rules of the United States courts
    and the Judicial Council of California for petitions for habeas corpus or modification of custody if such an

28   inmate requests assistance. Staff shall not in any way retaliate against or discipline any inmate for
    initiating or maintaining a lawsuit." § 3160(a).

15. *See Ransom v. California Dept. of Corrections and Rehabilitation*, No. 1:11-cv-00068-AWI-MJS (PC), 2013 WL 6572578, at *6 (E.D. Cal. Dec. 13, 2013) ("Plaintiff's allegations do not entitle him to relief under Title 15 § 3160…The Court has found no authority to support a finding of an implied private right of action under Title 15, and Plaintiff has provided none. Several district court decisions hold that there is no such right" [citations omitted]), findings adopted at 2014 WL 1600457 (E.D. Cal. Apr. 18, 2014). *See also Nible v. Fink*, No. 19-55890, 828 Fed.Appx. 463, 464 (9th Cir. 2020) ("The district court properly dismissed Nible's state law tort claims alleging violations of [Title] 15 of the California Code of Regulations because the cited regulations do not create a private right of action").

In sum,[14] this Court finds Plaintiff's motion for leave to file a third amended complaint should be denied because the proposed amendments would be futile for the reasons discussed herein and because Plaintiff unduly delayed seeking amendment.

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' motion to dismiss (Doc. 33) be **GRANTED**; and

2.  Plaintiff's motion for leave to file an amended complaint (Doc. 40) be **DENIED**.

*Remainder of This Page Intentionally Left Blank*

---

[14] The undersigned does not address Defendants' opposition arguments concerning joinder of the new claims alleged in the proposed and lodged amended complaint. Suffice to say, in the March 29, 2023 order, the Court found joinder permissible. (*See* Doc. 29 at 8-9.)

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). Within 14 days of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**January 22, 2024**__                    _____
                                                            UNITED STATES MAGISTRATE JUDGE

24